**REVISED APRIL 3, 2013**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 1, 2013

Lyle W. Cayce
Clerk

No. 12-70032

GARCIA GLENN WHITE,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:02-CV-01805

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Garcia Glenn White, a prisoner in the custody of the Texas Department of Criminal Justice, moves this court for a certificate of appealability ("COA") following the district court's dismissal of his 28 U.S.C. § 2254 motion. For the following reasons, White's application for a COA is DENIED.

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## FACTS AND PROCEEDINGS

White was convicted and sentenced to death for the murders of Bernette and Annette Edwards. The Texas Court of Criminal Appeals ("TCCA" or "Court of Criminal Appeals") affirmed White's conviction and sentence on direct review on June 17, 1998. *White v. State*, No. 72,580 (Tex. Crim. App. June 17, 1998). White then filed a state application for a writ of habeas corpus. The trial court entered findings of fact and conclusions of law recommending that White be denied relief, and the Court of Criminal Appeals adopted the trial court's findings and conclusions on February 21, 2001. *Ex parte White*, No. 48,152-01 (Tex. Crim. App. Feb. 21, 2001). White filed a second state habeas application on January 11, 2002, but the Court of Criminal Appeals dismissed the application for abuse of the writ on April 24, 2002. *Ex parte White*, No. 48,152-02 (Tex. Crim. App. April 24, 2002).

White filed a federal habeas petition on May 3, 2002. The district court granted White an administrative stay pending the outcome of DNA retesting. On September 30, 2011, after retesting, the district court denied White's petition, and denied White a COA. *White v. Thaler*, No. 4:02-01805 (S.D. Tex. Sept. 30, 2011). White filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which the district court also denied. White then filed an application for a COA with this court.

## STANDARD OF REVIEW

Federal habeas relief is available when a state court decision adjudicating a claim on its merits is shown either: (1) to be "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) to be "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington v. Richter,* 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring in the judgment)).

To obtain a COA from this court, White must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, White must demonstrate that "his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). Where, as here, a district court has rejected a petitioner's claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The district court carefully considered each of White's twenty one claims for relief, and determined that each was foreclosed by clear, binding precedent. White has not made the required showing that reasonable jurists would find the district court's conclusions debatable or wrong.

## DISCUSSION

### I. Ground One

White's first allegation in support of a COA is that the district court erred in rejecting his argument that the prosecution in the underlying state court proceeding improperly struck a black member of the venire, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). To succeed under *Batson*, White must first make a prima facie showing that there was a racially discriminatory strike. *Id*. at 96-97. If the prosecutor offers a race-neutral explanation, then the court determines if the defendant has shown purposeful discrimination. *Id*. at 98. After White presented his prima facie case, the trial court held a hearing in

which the State submitted race-neutral explanations for the strike. In particular, the prosecutor stated that: (1) the juror refrained from giving his personal opinions about the various issues in the case; (2) the juror indicated that the prosecutor was trying to trick him into providing an answer as to his feelings about the death penalty; and (3) the prosecutor had a general feeling that the juror did not trust him or was suspicious of him. *White v. State*, No. 72,580, slip op. at 9-10. The prosecutor also noted that two black men had already been accepted for the jury.

The trial court accepted the State's explanation, and overruled White's *Batson* challenge. The Texas Court of Criminal Appeals affirmed, noting that White presented no evidence indicating that the prosecutor's reasons for dismissing the juror were pretextual. The district court agreed with the Texas Court of Criminal Appeals, noting that:

> Considering the trial court's superior ability to make credibility determinations, the absence of any evidence of a pattern of striking minority venire members, and the fact that two African-Americans sat on the jury that convicted White and sentenced him to death, the TCCA's conclusion that White failed to prove purposeful discrimination is not an unreasonable determination of the facts, or an unreasonable application of *Batson*.

*White v. Thaler*, No. 4:02-01805, slip op. at 19.

Because the focus of the inquiry in a *Batson* challenge is the credibility of the prosecutor, the trial court's findings are entitled to "great deference." *Batson*, 476 U.S. at 98 n.21. The state trial court made a credibility determination in favor of the prosecutor, and White has presented no evidence that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under our deferential standard of review, White has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), sufficient for appellate review.

## II. Ground Two

Three prospective jurors, Mary Raines, Kelly Guthrie, and Beatrice Hamann, stated in response to voir dire questioning that they would hold the State to a higher burden of proof than required by law in a death penalty case. The State challenged these three jurors for cause, and the state trial court accepted the challenge and dismissed the jurors. White challenged these dismissals, arguing that they violated *Witherspoon v. Illinois*, 391 U.S. 510 (1968), which held that "a State may not constitutionally execute a death sentence imposed by a jury culled of all those who revealed during voir dire examination that they had conscientious scruples against or were otherwise opposed to capital punishment." *Adams v. Texas*, 448 U.S. 38, 43 (1980) (citing *Witherspoon*, 391 U.S. at 519). As applied to White's case, this means that "a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror." *Id*. at 45.

Because White failed to object to the dismissal of Mary Raines at trial, the district court held that he did not sufficiently preserve his claim for appellate review. Reasonable jurists would not disagree with this holding. To preserve a claim for federal habeas review, a defendant must make a specific and timely objection at the time of the allegedly objectionable conduct. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977). Failure to object constitutes a procedural default, which bars federal habeas relief unless the petitioner shows either cause for the default and actual prejudice flowing from the alleged constitutional violation, or a miscarriage of justice. *Id*. at 87-91. White failed to demonstrate a fundamental miscarriage of justice for the reasons discussed in Section IV, *infra*, and he did not offer any cause for the default. Accordingly, no reasonable jurist would find that White is entitled to a COA on his *Witherspoon* claim, as it relates to Mary Raines.

The state trial court engaged in extensive follow-up questioning of Kelly Guthrie and Beatrice Hamann to determine whether they would be capable of following the law. Upon questioning, Beatrice Hamann stated that, if the State proved all the elements of the offense beyond a reasonable doubt based on testimony from a single eyewitness, she would require more evidence prior to convicting. Kelly Guthrie stated that he would have to be "100% certain" of guilt, and would also hold the State to a higher burden of proof with regard to punishment. The trial court held that the jurors' ability to perform their duties was therefore substantially impaired, and the Texas Court of Criminal Appeals affirmed.

A trial court's finding of bias under a challenge for cause is a factual finding that is presumed correct in federal habeas proceedings, unless demonstrated to be clearly erroneous. *Wainwright v. Witt*, 469 U.S. 412, 429-30 (1985). The district court denied habeas relief after finding that White failed to show that the trial court's finding was erroneous. For the reasons expressed above, we hold that this issue is not debatable among jurists of reason. Accordingly, White is not entitled to a COA on any of his *Witherspoon* claims.

**III. Grounds Three, Four, and Five**

On July 21, 1995, White was validly arrested for the capital murder of a convenience store clerk that had occurred eight days earlier (on July 13, 1995). During the investigation of the July 13 murder, police received information from Tecumseh Manuel (a friend of White's) regarding the Edwards murders, as well as a third capital murder involving White that had occurred in November 1989. The police read White his *Miranda* rights and questioned him about the Edwards murders on July 22. White waived his rights, and although he initially denied involvement in the Edwards murders, he admitted to limited involvement after being confronted with the information provided by Manuel.

White was appointed counsel for the July 13 murder on July 24, 1995. On July 28, after obtaining new information, police again questioned White about

the Edwards murders. White had not yet been charged in the Edwards murders and did not have counsel for that case. White claimed that he made a clear request for counsel with respect to the Edwards murders when he stated, after receiving his *Miranda* rights: "I have a right to a, one . . . I definitely have the right to have a lawyer present." After White's statement, the officer clarified that White was correctly stating his rights as read to him, and asked White if he was willing to waive those rights and discuss one of the other murders. White agreed to do so.

The state trial court entered findings of fact and conclusions of law, finding that White was informed of his rights; that he voluntarily waived them prior to all interviews and recorded statements; and that White never invoked his right to an attorney during any of the interviews. The Texas Court of Criminal Appeals affirmed, holding that White's invocation of his right to counsel was, at best, ambiguous.

A valid invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). To invoke the right to counsel, the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id*. (emphasis in original).

The district court held that White's statement was reasonably understood as a reference to his previous conversation with the questioning officer, in which the two had engaged in a substantial discussion about the right to counsel. In other words, a reasonable officer would have understood White's statement to

be nothing more than an acknowledgment that he had the right to an attorney. The holding of the Texas Court of Criminal Appeals that White was informed of, and knowingly and voluntarily waived, his right to counsel was therefore not an unreasonable application of the law sufficient to merit habeas relief. We hold that this conclusion is not debatable among jurists of reason.

The district court found White's argument—that substance abuse rendered him incompetent to waive his rights—similarly unmeritorious. The interviewing officer stated that White was not intoxicated at the time of questioning, and that White specifically told him that he had been drug free for a few days. White did not, and has not, offered rebuttal evidence to this testimony. Based on this testimony, the state trial court entered factual findings that White was not under the influence of drugs or alcohol at the time of the interviews; White was not threatened, coerced, or promised leniency in return for his statements; and that the statements were made voluntarily. The district court noted that White did not present any evidence that he was so impaired that he did not understand his rights or the consequences of waiver. The district court further concluded that the trial court reasonably held that White was competent to waive his rights at the time of questioning. *See, e.g.*, *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (noting that a waiver is voluntary if, under the totality of the circumstances, "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."). White has not made a substantial showing of the denial of a constitutional right sufficient to merit a COA on his Fifth Amendment claims. *See* 28 U.S.C. § 2253(c)(2).

White also raises a Sixth Amendment challenge to his questioning about the Edwards murders. Because White had not been charged with the Edwards murders during the relevant questioning, his Sixth Amendment right to counsel had not yet attached. *McNeil*, 501 U.S. at 175-76; *United States v. Gouveia*, 467

U.S. 180, 187 (1984); *Henderson v. Quarterman*, 460 F.3d 654, 661-62 (5th Cir. 2006). No reasonable jurist would find that the district court erred in denying habeas relief as to this claim.

## IV. Grounds Six, Seven, Eight, Nine, and Ten*

White makes various assertions of his actual innocence, including claims relating to the presentation of new DNA evidence, claims relating to evidence of his future dangerousness, and claims relating to evidence of mitigating circumstances. The district court found that none of these claims provides an appropriate ground for habeas relief.

"[A] claim of 'actual innocence' is not itself a constitutional claim, but [is only] a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Instead, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. "[T]he traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency." *Id.* at 417.

The Supreme Court has assumed, without deciding, that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* The threshold showing for this assumed right would "necessarily be extraordinarily high." *Id.*; *accord House v. Bell*, 547 U.S. 518, 555 (2006) (noting that such a standard, if it were to exist, would be higher than the standard set

* The numbering in White's summary of the Grounds Presented for Review differs slightly from the numbering in White's Brief in Support for Application for a Certificate of Appealability. We have followed the latter in this opinion, although some of White's briefing conflates these issues.

out in *Schlup v. Delo*, 513 U.S. 298 (1995), for overcoming defaulted claims). However, "[n]ever having seen such a claim that was supported by anything that even approached a 'truly persuasive demonstration' of actual innocence, '[t]he Fifth Circuit has rejected this possibility and held that claims of actual innocence are not cognizable on federal habeas review' in accordance with our pre-*Herrera* precedent." *Cantu v. Thaler*, 632 F.3d 157, 167 (5th Cir. 2011) (alterations in original) (quoting *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003)), *cert. granted, judgment vacated on other grounds*, 132 S. Ct. 1791 (2012).

Under the Fifth Circuit's current standard, no reasonable jurist would find that White can establish a constitutional violation through his various claims of actual innocence. This includes those claims in which he insinuates that newly discovered evidence would have affected the punishment that he received, to the extent that these claims are premised on the argument that the jury's underlying guilty verdict was incorrect. *See Herrera*, 506 U.S. at 405 ("[P]etitioner's claim is not that some error was made in imposing a capital sentence upon him, but that a fundamental error was made in finding him guilty of the underlying murder in the first place. It would be a rather strange jurisprudence, in these circumstances, which held that under our Constitution he could not be executed, but that he could spend the rest of his life in prison.").

The district court also held that the newly presented evidence was not sufficient to merit relief even under the *Schlup* standard of review. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Schulp*, 513 U.S. at 324). The only evidence reflected by the DNA

retesting was evidence of a potential third party at the crime scene. However, evidence of a potential third party's involvement does not rule out White's guilt, nor is it truly newly presented, as the jury heard evidence from a serological expert who testified on cross-examination that there were indications of another DNA contributor at the crime scene.

White also seeks to introduce evidence, developed during his time in jail, that he "has existed within the prison society and pose[s] no future dangerousness." Although White could have presented this evidence at his original hearing had it been available to him, *see Skipper v. South Carolina*, 476 U.S. 1, 4-10 (1986), this evidence is not the sort that is cognizable on collateral review. *See Sawyer v. Whitley*, 505 U.S. 333, 347 (1992) ("[T]he 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."). This is especially true given that the evidence did not exist at the time of White's sentencing, so there is no argument that it would have been included but for some constitutional defect. Finally, this evidence would not satisfy the elevated *Schlup* standard, even if it were to be admissible. *See, e.g., Hughes v. State*, 897 S.W.2d 285, 294 & n.13 (Tex. Crim. App. 1994) (holding that 21 years of crime-free, violence-free behavior, twelve years of good behavior in prison, and other meaningful, productive activities were not sufficient to outweigh the State's evidence in support of the death penalty). Accordingly, White has not made a substantial showing of the denial of a constitutional right with respect to any variations of his claim of actual innocence. *See* 28 U.S.C. § 2253(c)(2).

## V. Grounds Eleven and Twelve

White argues that the future dangerousness and mitigation sections of his punishment charge violate *Apprendi v. New Jersey*, in which the Supreme Court held that, except for prior convictions, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). The Supreme Court extended *Apprendi* to facts giving rise to capital punishment in *Ring v. Arizona*, 536 U.S. 584, 589 (2002).

The district court held that application of *Apprendi* is barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). After *Teague*, "[i]f a new rule of constitutional criminal procedure has been announced, it is generally unavailable retroactively to collateral cases in which judgment has become final unless it falls within an exception to the general rule, or the Supreme Court explicitly makes it retroactive." *Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) (citation omitted). In other words, "federal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the state conviction becomes final." *Id.* (emphasis omitted). White's conviction became final in 1998, two years before *Apprendi*, and four years before *Ring*. These cases do not apply retroactively to cases on collateral review. *See, e.g., Schriro v. Summerlin*, 542 U.S. 348, 353-55 (2004); *United States v. Brown*, 305 F.3d 304, 309 (5th Cir. 2002); *accord Rowell v. Dretke*, 398 F.3d 370, 379 (5th Cir. 2005) (discussing the inapplicability of *Apprendi* to Texas's punishment charges on future dangerousness and mitigation). Accordingly, no reasonable jurist would find that White is entitled to relief for any of his claims under *Apprendi*.

## VI. Grounds Thirteen and Fourteen

White argues that his statutory mitigation jury instruction was constitutionally inadequate under the "mixed signals" analysis of *Penry v. Johnson*, 532 U.S. 782 (2001) ("*Penry* II") because it was ambiguous as to the burden of proof. Reasonable jurists would agree with the district court that this claim is *Teague*-barred, because the Supreme Court has never held that *Penry* II's ruling on "mixed signals" applies retroactively to cases on collateral review. Alternatively, "no Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Rowell*, 398 F.3d at 378. Any argument that an ambiguity in the special issue regarding the

burden of proof violates *Penry* is meritless. *See id*; *see also Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006) (citing *Rowell*, 398 F.3d at 378).

White also argues that Texas's special issue "*Penry*-instruction," created pursuant to *Penry v. Lynaugh,* 492 U.S. 302 (1989) ("*Penry* I"), violates the ex post facto clause of the Constitution. The intervening change of law via *Penry* I permitted defendants to persuade the jury that mitigating evidence cautioned against imposing the death penalty. As the district court noted, this is not a violation of the ex post facto rule, as nothing about this procedural change makes punishable an act that was not punishable at the time it was committed, or imposes more severe punishment than was permitted under the law at the time of the act. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981). In addition, the only evidence White seeks to introduce through his *Penry* allegations is his good behavior within the prison system and the presence of a potential third party at the crime scene, neither of which (he alleges) were even available to him to present at trial. He has therefore failed to make a substantial showing of the denial of a constitutional right sufficient for a COA. *See* 28 U.S.C. § 2253(c)(2).

**VII. Grounds Fifteen and Sixteen**

White alleges that the Texas death penalty statute, codified at Article 37.071 of the Code of Criminal Procedure, violates the Eighth and Fourteenth Amendments. A capital sentencing scheme will be upheld as constitutional as long as it "rationally narrows the class of death-eligible defendants and permits a jury to consider any mitigating evidence relevant to its sentencing determination." *Kansas v. Marsh*, 548 U.S. 163, 175 (2006). As the district court acknowledged, both this court and the Supreme Court have held that the Texas death penalty scheme meets this requirement. *Jurek v. Texas*, 428 U.S. 262, 271 (1976); *Sonnier v. Quarterman*, 476 F.3d 349, 366-67 (5th Cir. 2007); *see also Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001) ("[Texas's] statutory scheme has not radically changed from the version upheld in *Jurek v. Texas*, except to incorporate the dictates of *Penry*." (alterations and emphases omitted)

(quoting *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App.–en banc 1997), *cert. denied* 118 S.Ct. 557 (1997))).

The district court also noted that this court has specifically upheld Texas's mitigation and future dangerousness special issues as they relate to the death penalty. *Id.* In *Beazley v. Johnson*, this court held that "*all* mitigating evidence can be given effect under the broad definition of mitigating evidence found in [§ 2(e)]," and that "the amended statute does *not* unconstitutionally 'preclude [] [the jury] from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" 242 F.3d at 260 (alterations and emphasis in original) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). Therefore, no reasonable jurist would find that White is entitled to relief on his claims under the Eighth and Fourteenth Amendments.

## VIII. Grounds Seventeen, Eighteen, Nineteen, Twenty, and Twenty One

White contends that Texas and Harris County discriminate in their application of the death penalty on the basis of race. A defendant claiming an equal protection violation in a death penalty case must prove that the prosecutor acted with a discriminatory purpose in that particular case. *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987). The district court held that White has presented no evidence that the prosecutor in his case acted with such a purpose. Furthermore, as the district court noted, White's argument that *McCleskey* is no longer good law after *Bush v. Gore*, 531 U.S. 98 (2000) is not well taken. *See Coleman v. Quarterman*, 456 F.3d 537, 542-43 (5th Cir. 2006) ("In two unpublished decisions, this court previously has discussed *Bush v. Gore*'s utter lack of implication in the criminal procedure context. We adopt the reasoning of those persuasive opinions and, likewise, conclude that the question is beyond debate." (citations omitted)). Thus, White has not made a substantial showing

of the denial of a constitutional right in his allegation of disparate treatment in Texas's application of the death penalty. *See* 28 U.S.C. § 2253(c)(2).

White alleges that Texas's clemency procedures discriminate on the basis of race, and violate international law. White does not have an execution date, and he has not filed a petition for executive clemency. Accordingly, no reasonable jurist would find that his allegations relating to the clemency process are ripe for review. *See Texas v. United States*, 523 U.S. 296, 300 (1998); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987).

## CONCLUSION

White has not satisfied his burden of showing that he is entitled to a COA on any of the grounds discussed above, and his motion for a COA is DENIED.