IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| GARCIA GLENN WHITE, | § | |
| | § | |
| Applicant, | § | |
| | § | |
| V. | § | No. 12-70032 |
| | § | (USDC No. 4:02-CV-01805 |
| RICK THALER, Director | § | S.D. Tex.) |
| Texas Department of Criminal | § | |
| Justice – Correctional Institutions | § | |
| Division | § | |

**MOTION FOR A PANEL REHEARING ON DENIAL OF PETITIONER'S APPLICATION FOR A CERTIFICATE OF APPEALABILITY**

TO THE HONORABLE JUSTICES OF COURT OF APPEALS:

COMES NOW, Garcia Glenn White, Applicant, by and through his attorney of record Patrick F. McCann in the above captioned and numbered cause with this Motion for a Panel Rehearing on Denial of Petitioner's Application for Certificate of Appealability pursuant to Rule 40, *Federal Rules of Appellate Procedure*.

**Article 11.071, Texas Code of Criminal Procedure**:

Respondent's presentation set out several points this Honorable Panel should consider. At page 15, (6) of Respondent's Opposition with regard to Applicant's mitigation evidence Respondent states: "(6) Whites difficulties might stem in part from a head injury, but there was no specific or definitive evidence to support this conclusion."

1

Applicant has never been able to present this evidence. Due to the filing constraints of Article 11.071, Texas Code of Criminal Procedure initial writ counsel was unable to investigate, develop and submit this evidence.

Respondent points out, in his Opposition, that Applicant has not been harmed by the application of 11.071 because he was able to file a timely writ. The record says differently. Respondent points out and seeks, once again, to procedurally bar Applicant from effectively challenging his conviction, thus giving Respondent an unfair advantage. Applicant has made several attempts to litigate this issue and have the evidence entered into the record. At each instance the Texas Court of Criminal Appeals rejected his writ applications as successive and Respondent then, as now, utilizes the procedural bar to stop Applicant from effectively challenging the Constitutionality of his conviction. A timely writ in this instance is not always a complete writ.

At page 64 of Respondent's Opposition Respondent claims Applicant lacks standing because he has not been harmed. The harm is inherent in the record Respondent relies upon. The harm lay in the fact that had first writ counsel possessed the time and resources these issues would have been brought in the <u>initia</u>l state writ application but were not. Respondent's argument that Applicant was able to file a state writ fails to take cognizance of the colorable issues brought in successive petitions, which were

2

dismissed as procedurally barred.

The Article 11.071 filing time places the capital defendant in a "no win" position as demonstrated here. The statute sounds good on its face but in application it forecloses any challenge initial writ counsel is unable to develop and present for review. Presently there is no ineffective assistance of counsel on habeas corpus. Article 11.071 violates the equal protection clause of the Constitution. Applicant has standing and harm is evident on the record. Applicant asks the Panel to reconsider the denial of his Applicant for a Certificate of Appealability.

**Confession and Mitigation**:

The State of Texas would have this Court believe Applicant does not suffer from any kind of mental deficiency. On page 15 of Respondent's Opposition: "(6) White's difficulties might stem in part from a head injury, but there was no specific or definitive evidence to support this conclusion." On page 16: "(1) White has an IQ of approximately 87 and <u>has a mental age of a person twelve to thirteen years old,</u> id at 39-93; (2) the minor deficiency in his intellectual functioning may be influenced by organic or neurological problems, but the problem is only slight, id at 397-401."

3

The question of whether Applicant invoked his right to counsel has never been considered in light of the above facts. Jurists of reason should disagree with the ruling below based on the facts set out by Respondent. ***Applicant is, in essence, a juvenile, and does not hold the mental capacity of a mature adult.*** His ability to reason and make decisions is that of a twelve or thirteen year old, as acknowledged by the Respondent.

Under the persistent pressure of police interrogation Applicant's multiple statements are questionable. Both state and federal statutory law hold separate, specialized procedures for juveniles. Up to this point each and every review has been set against the backdrop of Applicant being a mature adult, when the record reveals he has lived long enough to have matured, but has not. His body has aged but his mental capacity has not developed. This is in addition to the long-term use of narcotics on an underdeveloped mind.

In a determination of whether or not COA should issue when viewed through a lens of the deferential scheme laid out in 28 U.S.C. § 2254(d) jurist of reason could conclude the determinations below were based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

The Supreme Court has set out in *Atkins v. Virginia*, 536 U.S. 304 (2002) it is unconstitutional to execute a mentally deficient defendant and in

*Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) the Supreme Court held it unconstitutional to executed juveniles. *Richter* requires an "unreasonable determination of the facts" or "unreasonable application" of Supreme Court precedent. The courts below have never applied *Roper* to the facts in this case.

The facts of this case fall between the two Supreme Court opinions. The two expert opinions hold Applicant's IQ at 76 and 87 placing him outside the scope of *Atkins.* On the other hand, it is undisputed Applicant's understanding and actions are those of the twelve or thirteen year old.

In *J.D.B. v. North Carolina*, 131 S.Ct. 2394 (2011) the Supreme Court addressed the issue of age in regard to *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d:

Under the *Atkins* standard Applicant may not be considered mentally disabled, but <u>under the *Roper* analysis the question has not been addressed.</u> This case differs from the above in one major respect. In *J.D.B. v. North Carolina* the Court bases its decision on the officer's knowledge of age. In Applicant's case, the interrogating officer never investigated whether Applicant was/is/or ever will be functioning as an adult and understood his warnings.

Applicant has set out in his briefs below and the record reflects his belief he was represented by counsel.  Now, <u>after the fact,</u> both state and federal district court relied on the wrong standard in their review of the facts in this case. Applicant is being held to the standard of an adult, when, as Respondent points out, he is psychologically an adolescent.

Applicant urges this Panel to ask themselves whether an adolescent can be held to the same standard as an adult and has the district court applied the wrong legal standard to its analysis? Applicant has matured physically yet his psychology is that of an adolescent. This will never change based on the biological damage to his brain due to injury.

A reading of the record in this light cast question on the police interrogation. Can an adolescent be held to the same standard as an adult? Should a person, with the mentality of a child, be required to utter "magic words of law" in order to be provided a lawyer? The rulings of the court(s) below are unreasonable as applied to the facts of this case.  Jurist of reason could conclude the wrong standard of review has been applied throughout and rehearing should be granted.

**Actual Innocence:**

***Based on the questionable statements made by Applicant, without the benefit of counsel, the new DNA evidence of an unidentified party is crucial.***

Under the "miscarriage of justice" doctrine, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Sawyer v. Whitley*, 505 U.S. 333, 339-40) when applied to state procedural bars a reasonable jurist could disagree with the state court procedural bar in this case based on the unreasonable time limitations placed on initial habeas counsel to investigate and develop the DNA evidence.

At page 46, Opposition, Respondent points out the retesting of the Evidence points out Applicant was in Edwards's apartment. It <u>does not say when</u> he was there, or intimate he committed any crime while there. Respondent's position that the DNA proves Applicant was involved in the crime is incorrect. It proves no such thing.

If the reasoning of Respondent is to be taken as true then the DNA evidence of others which testing has revealed means they too were at the "crime scene". Respondent attempts to have it both ways.   At best, the DNA evidence of Applicant merely demonstrates he had been there at some time, not at the "crime scene" on the day the crime was committed.

7

The new DNA evidence goes to Applicant's culpability. Respondent relies on procedural bar, which would not be valid if Article 11.071, Texas Code of Criminal Procedure did not limit the time in which a habeas application would be filed or successive petition submitted based on new evidence. Reasonable jurists could disagree with the lower court's treatment of these issues.

**<u>Future Dangerousness And New Factual Evidence:</u>**

A jury of mortal men, who do not hold any special ability to divine future events, should be reviewed in light of years of living in the prison environment. If a jury is infallible then why bother to even review a conviction? Respondent points to the trial evidence, but relies on procedural bars to exclude evidence which should have been introduced at trial and has now been developed by habeas counsel.

It is the position of Respondent that a finding of future danger should <u>never</u> be reviewed in light of new facts. The jury's finding on Applicant being a future danger are questionable in light of the facts "now". Reasonable jurist could disagree with the proposition that a finding of future dangerousness is infallible and rehearing should be granted on this issue.

### ***Apprendi* Claims:**

Contrary to Respondent's position in his Opposition the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435, (2000) issue was/is adequately briefed in the habeas petition and in the request for COA. Should a rehearing be granted then the issues COA are to be briefed on the appeal of those issues granted.

### ***Penry II* Allegation:**

On page 54 of Respondent's Opposition it is claimed Applicant is procedurally barred. Jurist of reason can find this debatable based on the constraints of 11.071, Texas Code of Criminal Procedure, as set out in the first section of this Reply. Yes, it <u>was</u> raised in a second state application, and again, the reason being initial writ counsel was unable to develop all the necessary issues in the time allowed. To forbid reaching the merits of a claim based on a state statute which is under challenge demonstrates that jurists of reason would differ on whether this results in a miscarriage of justice.

Respondent, next claims there is no precedent on this issue and cites several unpublished opinions. This is a case of first impression, and the Court's refusal to grant COA is to invite a fundamental miscarriage of justice. Applicant has made every effort to bring his meritorious claims before the state court and each time been barred by that

9

court under Article 11.071, Texas Code of Criminal Procedure.

Respondent next attempts to rely on the *Teague v. Lane*, 489 U.S. 288 (1989) bar where in the previous sections he argued *Teague* does not apply. It is the district court's reliance on the bar which forces Applicant to argue the issue. Jurist of reason could find this debatable and rehearing should be granted on this issue.

## **EX POST FACTO VIOLATION:**

This claim was properly briefed in Applicant's habeas petition and in the COA. Respondent argues in his Opposition that Applicant mentions the Ex Post Facto Clause in relation to *Teague v. Lane*, 489 U.S. 288 (1989). The district court utilized the *Teague* bar to not reach the merit of the claim under *Weaver v. Graham*, 450 U.S. 24 (1981). Respondent next argues that at the time the offense occurred, state law did not require a mitigation instruction. **That is standing retroactivity on its head.** The Constitution requires a vehicle for the sentencing jury to give weight to mitigation evidence.

Applicant does not misconstrue the mitigation special issue. In this case, the only way to receive a life sentence was to present mitigation evidence. Here Respondent shifts position from earlier argument. The argument goes back to the use of "probability" which forces Applicant to present evidence.

**Clemency Process:**

Respondent claims Applicant does not have standing. There is no adequate state remedy other than this to go forward. No Supreme Court case has addressed the issue of equal protection as it applies to the clemency process under the Fourteenth Amendment. More importantly, this issue will be repeated every time there is an inmate facing execution, and is thus foreseeably repeatable, rendering this issue ripe. The rationale behind the ripeness doctrine is that cases are declared not ripe because the injuries are either too speculative a court should not issue premature judgments based on abstract disagreements. *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967).

Ripeness typically arises when <u>pre-enforcement</u> review of a statute is sought, at which point two considerations are examined, and both must be present in order for an issue to be ripe. First, the plaintiff must show that a hardship is likely to be suffered in the absence of a judgment. This hardship could be caused by the law as it will eventually be applied, by collateral injuries, or because compliance with the law causes the hardship, and the only other choice is to break the law with the resulting consequences of being prosecuted. The second consideration is whether the issues are fit for a judicial decision. An issue that specific facts would assist in the judicial consideration will be found not ripe,

while an issue is ripe when it is mostly a question of law, one which does not depend on context. There is no more "ripe" issue than equal access to the state clemency procedures in a death case, where the hardship is an execution.

Likewise Mr. White is a member of a protected class, thus an allegation of a denial of equal protection mandates at least some fact-finding rather than consignment to a legal limbo incapable of judicial review. Every criminal defendant in Texas has standing. *Article 4 § 11, Texas Constitution; Article 48.01, Texas Code of Criminal Procedure*. The lower court's denial of these claims is just as debatable as any other issue.

Based on the limitations of Article 11.071 *§ 5, Texas Code of Criminal Procedure* and the denial of previous attempts to bring issues before the Texas Court of Criminal Appeals **any attempt at litigation will be denied as abuse of writ**. At the point when clemency can be sought Applicant will have only 21 days to file any application for review of clemency matters, and thus practically unable to file anything. If he does not have standing now, Applicant will certainly not have it after his death.

The issue of standing could be and should be a matter of debate among jurists as the issue has not yet been decided. Any issue which has not yet been decided nor precedent set should be debatable.

One cannot consign this or any applicant to the legal limbo that the Respondent desires. This issue is ripe and rehearing should be granted.

### *Batson* Claim:

Application for a COA <u>is not</u> an appeal and Applicant has properly relied on the issues briefed below. Respondent's, and this Court's, reliance on *Trevio v. Johnson*, 168 F.3d 173, 181 n. 3 (5th Cir. 1999) is misplaced. In *Johnson* the Applicant listed 1 <u>additional, undeveloped</u> arguments relating to his state court conviction.id at 181 n.3. Such is not the case here. Applicant seeks a COA on those issues properly briefed and ruled on by the district court. The issue was properly briefed in Applicant's habeas petition. The issue to be decided here is whether or not jurist of reason find the district court's disposition of the issue debatable or not. If jurists of this Court find the district court's decision debatable, then the issue must be briefed on appeal

Respondent, and by implication this Honorable Court, relies on *Batson* and *Hernandez v. New York*, 500 U.S. 352 (1991) with regard to the credibility of the prosecutor's explanation. Here the issue is the credibility of the prosecutor. The prosecutor's "race-neutral" explanation of the strikes against venireman were …questionable. Any "race-neutral" explanations by the prosecutor in this case require scrutiny by federal

court. The state court findings cannot be relied on because they are unreasonable under 28 U.S.C. § 2254(d).

Respondent points to juror Baineaux's juror questionnaire, but responses in the questionnaire are not binding and no answer is binding until the trial court instructs the venire on the law. Under Texas law, in a capital case, the voir dire starts when the trial judge begins examining the venire as prescribed in Article 35.17, *Texas Code of Criminal Procedure;* see also *Davis v. State*, 782 S.W.2d 211, 215 (Tex. Crim. App. 1989).

## **Applicant is entitled to COA on Improperly Excluded Jurors:**

As set out in the Application for a COA the question asked of veniureman Hamann is improper. It is a direct misstatement of Texas law. Not only should the juror require more evidence, the law does, too. Article 38.17, *Texas Code of Criminal Procedure*. The trial court's decision to exclude this juror was inappropriate based on this question. Respondent cites *Buchanan v. Kentucky*, 483 U.S. 402, 416 (1987) in support of his position. *Buchanan* does not apply here.

## CONCLUSION

Petitioner asks the panel of this Honorable Court to reconsider its denial of his Application for a COA, grant rehearing and order briefing on the issues granted.

Respectfully submitted,

/s/ Patrick F. McCann
Patrick F. McCann
Law Office of Patrick F. McCann
909 Texas Ave, Ste. 205
Houston, Texas 77002
713-223-3805
713-226-8097 Fax

## CERTIFICATE OF SERVICE

I, Patrick F. McCann, certify that today the 26th day of April, 2013, a copy of this petition for rehearing was served upon Woodsen Erich Dryden, Assistant Attorney General for Texas, P.O. Box 12548, Capitol Station, Austin, Texas 78711 by electronic delivery and/or postage prepaid to him at the address above.

/s/ Patrick F. McCann
Patrick F. McCann

## **CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.2.7(c), undersigned counsel certifies that this brief complies with type-face volume limitations of 5th Cir. R. 32.2.7.(b).

1. Exclusive of the portions exempted by 5th Cir. R 32.2.7(b)(3), this brief contains 3503 words printed in a proportionally spaced typeface.
2. This brief is printed in a proportionally spaced, serif typeface using Arial 14 point font in text and Arial 12 point font in footnotes.
3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout for the Court.
4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumcision of the type-volume limits is 5th Cir. R. 32.2.7. may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Patrick F. McCann
Patrick F. McCann

15